UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAIME S.,

                    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

_____/

Case No. 24-13395

Stephen J. Murphy, III
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT (ECF Nos. 11, 13)**

## I.    INTRODUCTION

Plaintiff Jaime S. filed a Title II application for a period of disability and disability insurance benefits on January 24, 2022, alleging disability beginning on August 21, 2020, but subsequently amended her alleged onset date to January 5, 2019. (ECF No. 4-1, PageID.32). The application was denied at the initial administrative level on April 26, 2022, and upon reconsideration on October 12, 2022. (*Id.* at PageID.99–100, 108–11). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on September 8, 2023. (*Id.* at PageID.51, 121). Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review on October 22, 2024. (*Id.* at PageID.16–18, 32–45). The ALJ's decision consequently became

the final decision of the Commissioner of Social Security ("Commissioner").  *See*

*Kearney v. Colvin*, 14 F. Supp. 3d 943, 949 (S.D. Ohio 2014) (citing *Wireman v.*

*Comm'r of Soc. Sec.*, 60 F. App'x 570 (6th Cir.2003)); *McClanahan v. Comm'r of*

*Soc. Sec.*, 474 F.3d 830, 832 (6th Cir. 2006).  The case is now before the court for

review of that decision under 42 U.S.C. § 405(g).  On March 4, 2025, the District

Judge referred this matter to the undersigned to review the Commissioner's

decision denying Plaintiff's claim for social security benefits.  (ECF No. 7).

After careful scrutiny of the record and the Parties' briefs, and for the

reasons below, the undersigned **RECOMMENDS** that Plaintiff's *Motion for*

*Summary Judgment* (ECF No. 11) be **DENIED**, the Commissioner's *Motion for*

*Summary Judgment* (ECF No. 13) be **GRANTED**, and the administrative decision

be **AFFIRMED**.

## II.    STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

*also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

2

to any fact, if supported by substantial evidence, shall be conclusive . . . .”).

“[S]ubstantial evidence is defined as ‘more than a scintilla of evidence but less

than a preponderance; it is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.’” *Rogers*, 486 F.3d at 241 (quoting

*Cutlip v. Sec’y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In

deciding whether substantial evidence supports the ALJ’s decision, the court does

“not try the case *de novo*, resolve conflicts in evidence or decide questions of

credibility.”  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486

F.3d at 247 (“It is of course for the ALJ, and not the reviewing court, to evaluate

the credibility of witnesses, including that of the claimant.”).

“[I]f substantial evidence supports the ALJ’s decision, this Court defers to

that finding ‘even if there is substantial evidence in the record that would have

supported an opposite conclusion.’”  *Blakley v. Comm’r of Soc. Sec.*, 581 F.3d 399,

406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if

the ALJ’s decision meets the substantial evidence standard, “‘a decision of the

Commissioner will not be upheld where the [Social Security Administration] fails

to follow its own regulations and where that error prejudices a claimant on the

merits or deprives the claimant of a substantial right.’”  *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm’r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## III.    STATUTORY AND REGULATORY FRAMEWORK

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[1]  The plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing *Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").

---

[1] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

## IV.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 42 years old at the time of the ALJ's decision.  (ECF No 11, PageID.1395).  She lives in Imlay City, Michigan, with her husband and twelve-year-old son.  (ECF No. 4-1, PagedID.53, 57).  She has at least a high school education.  (*Id.* at PageID.43).  Plaintiff's primary complaints are post total knee replacement and revision, tendonitis in the right arms, bulging discs in the back, and seizures.  (*Id.* at PageID.37).  In the past, Plaintiff worked in management in the food service industry, as a retail salesperson, a driver, and a maintenance tech. (*Id.* at PageID.288).

Two issues were before the ALJ at Plaintiff's administrative hearing.  First, whether Plaintiff had been disabled at any time from January 5, 2019, until the date that her eligibility for Social Security disability benefits had expired.  Second, the ALJ had to determine the date that Plaintiff's eligibility for such benefits had expired.

As to the second issue, the ALJ found that Plaintiff was eligible to receive Social Security disability benefits through March 31, 2021, and therefore that she was entitled to such benefits if she had been disabled at any time from January 5, 2019, to March 31, 2021.  To resolve the first issue—whether Plaintiff qualified for benefits—the ALJ received extensive medical records detailing Plaintiff's condition and testimony from Plaintiff and a vocational expert ("VE").

5

Plaintiff testified that from January 2019 through March 2021 she would lie down "[a]t least once, sometimes twice" a day to manage her pain. (ECF No. 4-1, PageID.71). She stated that "the most comfortable position for [her] to be in" was "sitting . . . tilted with most of [her] weight on [her] left hip and leaned back," while "trying to find a way to keep [her] right knee out and unbent as possible." (*Id.*). While sitting in this position she tried to keep her right leg "level with her waist." (*Id.* at PageID.72). And she detailed that she maintained this posture "[a]s much as possible" throughout the day to minimize pain. (*Id.*)

As for the VE, the ALJ asked her to opine on the jobs a hypothetical individual with Plaintiff's functional limitations could perform:

> I'd like for you to assume that we have a hypothetical individual who is a younger person, with a high school education and [Plaintiff]'s work experience, who can perform sedentary work, except this individual can only occasionally use right foot controls; never climb ladders; occasionally climb ramps and stairs; occasionally stoop and crouch; but never kneel or crawl; no concentrated exposure to extremes of temperature and humidity; no concentrated exposure to vibration; [and] no work at unprotected heights or on uneven or slippery terrain.

(*Id.* at PageID.76–77). The expert stated that such an individual could work in "some unskilled occupations" such as "[s]orter," "inspector," and "assembler." (*Id.* at PageID.77–78). The ALJ then asked the expert whether the hypothetical individual could work those jobs if they "required the ability to elevate a leg to

6

waist level for up to an hour beyond the customary breaks afforded in unskilled work." (*Id.* at PageID.78–79). The expert responded in the negative:

> Your Honor, in my opinion, that would be preclusive, whether it's one leg or both legs, frankly, a person has to pushback from or turn sideways to whatever surface they're working at, at these stationary workspaces that I talked about, and that would not be conducive to being able to perform those tasks effectively. In other words, you are not close enough to the surface, Your Honor, to be able to work and maintain the output expectations.

(*Id.* at PageID.79).

Based on this evidence, the ALJ issued a written decision denying Plaintiff's application after following the "five-step sequential evaluation process" codified at part 404(P) of title 20 of the *Code of Federal Regulations*. 20 C.F.R. § 404.1520(a)(1).

At **step one** of the evaluation process the ALJ had to consider Plaintiff's "work activity." 20 C.F.R. § 404.1520(a)(4)(i). If Plaintiff had been "doing substantial gainful activity" during the relevant period (January 2019 through March 2021), then she was "not disabled." *Id.* The ALJ found that Plaintiff had not worked at all since January 2019, and therefore that she was engaged in substantial gainful activity during the relevant time.

At **step two** the ALJ had to consider "the medical severity of [Plaintiff's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). Specifically, she had to ask whether Plaintiff had "a severe medically determinable physical or mental

impairment" or "combination of impairments that is severe." *Id.* If Plaintiff had such an impairment or combination of impairments, then the ALJ had to ask whether such impairment or combination of impairments "h[ad] lasted or . . . [is] expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. If Plaintiff lacked a severe impairment or combination of impairments meeting this duration requirement, then she was "not disabled." 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and degenerative joint disease of the right knee, status post total knee arthroplasty and revision surgeries.

At **step three** the ALJ had to consider whether Plaintiff's impairment or combination of impairments "me[t] or equal[ed]" an impairment listed in appendix 1 to part 404(P). 20 C.F.R. § 404.1520(a)(4)(iii). If Plaintiff's impairment or combination of impairments met or exceeded an impairment listed in appendix 1, then she was disabled. *See id.* The ALJ found that Plaintiff's degenerative diseases did not meet or exceed an impairment listed in appendix 1.

At **step four** the ALJ had to consider whether Plaintiff could have done "past relevant work" given her "residual functional capacity." 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work "is work that [a person] has done within the past five years that was substantial gainful activity and that lasted long enough for [them] to learn to do it." 20 C.F.R. § 404.1560(b)(1)(i). Residual functional

8

capacity is "the most [a person] can still do [in a work setting] despite [their] limitations."  20 C.F.R. § 404.1545(a)(1).  To evaluate Plaintiff's residual functional capacity ("RFC"), the ALJ had to "consider all [her] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a).  If Plaintiff could still have done past relevant work given her residual functional capacity, then she was "not disabled."  20 C.F.R. § 404.1520(a)(4)(iv).

To resolve whether Plaintiff was not disabled at step four, the ALJ first considered her RFC.  The ALJ noted that Plaintiff testified that "[s]he needed to lie down one to two times a day for at least one hour; and while sitting she elevated both legs to waist level as much as possible."  (ECF No. 4-1, PageID.37).  The ALJ also discussed Plaintiff's medical records and found that "the alleged severity and limiting effects of [her] symptoms is inconsistent with the medical evidence and other evidence during the relevant period."  (*Id.* at PageID.41).  And the ALJ explained why that was the case:

> There is no medical evidence relating to any impairment prior to October 2019.  In October 2019 she complained of lumbar and hip pain to her chiropractor, and a month after that presented to the ER for increased back pain after bending at home, and had evidence of paraspinal muscle spasm and limited range of motion at that time.  However, a lumbar CT scan showed only mild and developing degenerative changes, and records document normal ambulation.  She attended physical therapy and follow[ed] up with her primary care

9

physician but did not have any other significant complaints or treatment for her lumbar spine until well after [March 31, 2021]. . . .

The claimant's primary complaint was her right knee pathology, with onset in May of 2020 after gardening when she felt a pop in her knee. Imaging then confirmed significant pathology and she required surgery in August 2020. Post surgery she reported doing well and was not using any assistive device.  In October 2020, she reported her pain was controlled and she was taking over the counter medication for it. Her ability to walk was observed to be normal and she had normal strength and tone in all joints and normal movement in all extremities, with some edema in the right knee.  Her thoracolumbar spine appeared normal.  However, the claimant reported some increased in symptoms and in February 2021 underwent revision surgery.  As of August 19, 2021, 6 months after her knee revision and over 4 months after her date last insured, examination of the knee showed no deformity, warmth, erythema or swelling, and she had full strength and full extension in the right knee.  She was reported to be doing extremely well and doing home exercises with good results. Additionally, x-rays of the right knee were essentially normal.

(*Id.* at PageID.41–42).

The ALJ concluded that, Plaintiff's testimony notwithstanding, she could have performed "sedentary work" with some limitations during the relevant period. (*Id.* at PageID.36).  Under the Agency's rules, sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).  And work is "sedentary if walking and standing are required occasionally and other sedentary criteria are met."  (*Id.*)

Plaintiff, the ALJ found, could have performed sedentary work that did not require her to "climb ladders," "kneel or crawl," have "concentrated exposure to

10

extremes of temperature and humidity," have "concentrated exposure to vibration," or "work at unprotected heights or on uneven or slippery terrain." (*Id.* at PageID.36). And Plaintiff could only "occasionally" make "use of [her] right foot controls," "climb ramps and stairs," or "crouch and stoop." (*Id.*) Sedentary work with these restrictions precluded Plaintiff from performing any past relevant work, the ALJ found, so she proceeded to step five.

At **step five** the ALJ had to consider whether Plaintiff could still have performed "other work" given her RFC and "vocational factors of age, education, and work experience, as appropriate." 20 C.F.R. § 404.1550(c)(1); *see also id.* § 404.1520(a)(4)(v). The combination of an applicant's vocational factors forms their "vocational profile." If Plaintiff could still have performed other work that fit her vocational profile despite her RFC, then she was not disabled. Otherwise, she was disabled.[2]

---

[2] In resolving whether an applicant wins or loses at step five, the Agency sometimes must consult appendix 2 to part 404(P). *See* 20 C.F.R. § 404.1520. Appendix 2 instructs that an applicant is disabled or not disabled based on three variables: (1) vocational profile; (2) "exertional limitation"; and (3) transferability of job skills, if any. *See id.* part 404(P), app. 2. An applicant's exertional limitation may be "sedentary," "light," "medium," or "heavy," depending on whether they can perform sedentary, light, medium, or heavy physical work. *See id.* Appendix 2 directs that an applicant with Plaintiff's vocational profile—older than eighteen but younger than forty-five with a high school diploma—is not disabled so long as they can perform some sedentary work, even if they lack any job skills. *See id.* secs. 201.23–201.29. Thus, Plaintiff would have lost at step five if the ALJ had consulted appendix 2.

But the Agency only consults appendix 2 if the applicant's "impairment(s) and related symptoms *only* impose exertional limitations." 20 C.F.R. § 404.1569a(b) (emphasis added). If an applicant also has non-exertional limitations, however (such as "difficulty understanding or remembering detailed instructions" or "difficulty seeing or hearing"), then appendix 2 is binding only if it "directs a conclusion that [the applicant] [is] disabled based upon [their] strength limitations."

To resolve whether Plaintiff could have performed other work, the ALJ considered the VE's testimony. The VE, the ALJ explained, had opined that a person with Plaintiff's limitations could work as a sorter, an inspector, or an assembler.[3] The ALJ accordingly ruled that Plaintiff was not disabled at step five because she could perform other work.[4] Plaintiff later asked the Appeals Council to take up the ALJ's ruling, but it declined to do so.

## V.   DISCUSSION

Plaintiff presents one issue for the Court to consider in its review of the Commissioner's decision: Whether the ALJ erred by not following the agency's own standards in reaching her determination? (ECF No. 11, PageID.1393).

### 1.    Factual Background

Plaintiff had been working as a manager in the food industry, and before that she had worked as retail salesperson, a driver, and a maintenance tech. But she

---

20 C.F.R. § 404.1569a(d). Otherwise, appendix 2 is merely advisory. *See id.* The ALJ declined to apply appendix 2 because she found Plaintiff's ability to work had been "impeded by additional limitations." (ECF No. 4-1, PageID.44).

[3] The Agency's rules for determining disability state that "[w]e may use the services of vocational experts," and that such an expert "may offer relevant evidence . . . concerning the physical and mental demands of [an applicant's] past relevant work." 20 C.F.R. § 404.1560(b)(2).

[4] The ALJ also ruled that the transferability of Plaintiff's job skills was immaterial to whether she could perform other work because appendix 2 instructed that an applicant with her vocational profile who could still perform sedentary work was not disabled even if they had no job skills at all. *See generally supra* note 2 (explaining that transferability of job skills may be relevant under appendix 2).

stopped working in January 2019 because of alleged back and knee pain that was so severe she could not perform her job.

In October 2019, Plaintiff sought chiropractic treatment for symptoms she described as "tremendous pain in lower back, hips, lower sides, glutes and sometimes thighs," and "[r]andom contraction spasms in my back and lower sides." (ECF No. 4-1, PageID.295). She reported that these symptoms had begun five weeks earlier, and that they were aggravated by "sleeping, long periods of walking, standing, sneezing, coughing, laughing, bending over, [and] sitting down." (*Id.*) She rated her pain level as an eight on a ten-point scale.

On November 4, 2019, Plaintiff went to a hospital emergency room complaining of "[b]ack [p]ain." (*Id.* at PageID.309). The attending physician reported that the "[c]ontext" for her pain was "[b]ending," and he found that she had limited range of motion and muscle spasms in her spine. (*Id.*) His clinical impression was "[a]cute back pain" and "[d]isc disease." (*Id.* at PageID.314). He ordered a CT scan, which showed that she had a bulging spinal disc and spinal arthritis. (*Id.*)

On November 6, 2019, Plaintiff was treated by a nurse practitioner. She told the nurse that pain in her "lumbar spine" was "worsening" and had caused "interference with sleep." (*Id.* at PageID.445). On November 11, 2019, she was evaluated by a physical therapist. The therapist noted that treatment would focus

13

on pain and thirty-percent numbness in her lower extremities, moderate tightness in her lower body, and moderate weakness in her core and lower extremities.  (*See id.* at PageID.808).

On June 2, 2020, Plaintiff complained to her primary care physician ("PCP") of pain in her right knee.  She stated that "2 weeks ago she stood up after kneeling gardening and her knee buckled and she felt a pop." (*Id.* at PageID.439).  She reported that her pain was "sharp (while moving), tingling (in calf and foot, when swelling gets bad), and dull (constant)." (*Id.*)  She also reported that her pain was worsening, and that it was interfering with her sleep.  (*See id.*)

On June 17, 2020, Plaintiff received an x-ray of her knee, and a doctor diagnosed her with "[s]evere degenerative osteoarthritis of the right knee." (*Id.* at PageID.369).  On June 26, 2020, she received an MRI of her right knee, which confirmed that she had arthritis and also showed that she had torn ligaments and tendons.  (*See id.* at PageID.339–40).

In August 2020, Plaintiff received a total knee replacement on her right knee. (*Id.* at PageID.469).  On September 1, 2020, her knee surgeon noted that she was doing well post-surgery. (*Id.* at PageID.467).  On September 3, 2020, she told her physical therapist that she had fallen three times in the past twelve months. (*Id.* at PageID.798).  The therapist observed that she had "demonstrate[ed] difficulty"

14

with "ambulation, ascending/descending stairs, standing and [activities of daily life]." (*Id.* at PageID.799).

On September 17, 2020, Plaintiff told her knee surgeon that "she was doing well until a few days ago when . . . she felt a twisting sensation in her right knee while moving too quickly." (*Id.* at PageID.465).  She also stated that she had "some mild right hip and groin [dis]comfort." (*Id.*).

At appointments with her PCP on September 25 and October 27, 2020, Plaintiff reported that she did not have any difficulty climbing stairs.  (*See id.* at PageID.419, 430).  Her PCP noted after both appointments that she had "normal movement of all extremities." (*Id.* at PageID.420, 432).

On January 14, 2021, Plaintiff told her knee surgeon that she "is having pain and issues with giving out when going down stairs." (*Id.* at PageID.460).  Her surgeon noted that she had full range of motion in her right knee, but also that "[s]he has laxity with anterior and posterior drawer with a solid end point both anterior and posterior with moderate quadriceps atrophy." (*Id.*).

On January 22, 2021, Plaintiff saw another surgeon, to whom she reported "difficulty/pain ambulating, diffuse comfort, swelling, stiffness, weakness, and instability." (*Id.* at PageID.511).  That surgeon made the same objective medical observations as her knee surgeon.  (*See id.* at PageID.510).

On February 2, 2021, Plaintiff reported to a physician's assistant that she had "swelling" and "pain in [her] knee"; that her knee "pops when walking" and "feel[s] loose when non-bearing"; and that her knee "buckles." (*Id.* at PageID.514.)  She also stated that she "feels like someone is squeezing her foot in the middle of the night when she wakes up from her knee." (*Id.*).  She reported that these symptoms had begun on January 8, 2020, "after she was kneeling on a pad on the floor." (*Id.*).  At the time of the appointment, she was using a cane.

On February 22, 2021, Plaintiff received a "revision" surgery on her right knee. (*Id.* at PageID.529, 632–44).  Before the second surgery she reported that her knee pain had only gotten worse after the first surgery, and that physical therapy had not helped. (*Id.* at PageID.529).  She also stated that she had elected for revision surgery because she felt like she could not live with her pain any longer. (*Id.*).

On March 2 and 16, 2021, Plaintiff had post-operative check-up appointments. (*Id.* at PageID.677–85).  At both appointments she reported that she had knee pain, cramps in her foot, and swelling and warmth. (*Id.*).  But she also stated at both appointments that her condition was improving, and that she could walk with a cane. (*Id.*).  She used a wheelchair at the first appointment. (*Id.* at PageID.682–85).

At Plaintiff's August 19, 2021, six months post-op follow up, which was four months after her date last insured, she reported discomfort, occasional swelling, and warmth, and that she was doing home exercises but had not begun physical therapy yet.  (*Id.* at PageID.664).  Examination of the knee showed no deformity, warmth, erythema or swelling, and she had full strength and full extension in the right knee.  (*Id.* at PageID.662–65).  She was reported to be doing extremely well and doing home exercises with good results.  (*Id.*).  Additionally, x-rays of the right knee were essentially normal.  (*Id.*).

> 2.     Consideration of Plaintiff's Subjective

Plaintiff argues that the ALJ's decision should be reversed for three reasons.  *First*, she argues that the ALJ "fail[ed] to consider the record evidence of her need to lie down during a typical day at least once or twice for at least an hour and sit tilted with most of her weight on her left hip while leaning back for pain relief."  (ECF No. 11, PageID.1408).  But the ALJ did consider this evidence.  The ALJ discussed Plaintiff's testimony about her need to lie down and keep her legs elevated.  (ECF No. 4-1, PageID.37).  The ALJ also stated that Plaintiff's testimony conflicted with the objective medical evidence in the record.  The ALJ accordingly considered *and rejected* Plaintiff's testimony.  So the ALJ did not err by failing to consider the evidence Plaintiff identifies.

*Second*, Plaintiff points out that the Agency's expert testified that a person who had to keep their legs elevated all the time could not work as a sorter, an inspector, or an assembler.  Plaintiff concludes that the expert's testimony shows she was disabled.  Plaintiff would be right, if her testimony comported with the objective medical evidence.  Under the Agency's rules the ALJ had to consider the extent to which Plaintiff's subjective symptoms—such as her testimony that she had to keep her legs elevated—"c[ould] reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a).  The ALJ's decision, however, finds that Plaintiff's testimony was inconsistent with the objective medical evidence.  The VE's testimony accordingly does not help Plaintiff.

*Third*, Plaintiff maintains that the ALJ failed to articulate why her testimony did not comport with the record objective medical evidence.  The undersigned disagrees—the ALJ addressed this issue at length.  The ALJ found that the "alleged symptoms have support in the objective medical evidence.  However, the alleged severity and limiting effects of such symptoms is inconsistent with the medical and other evidence during the relevant period before the date last insured." (*Id.* at PageID.41).

The ALJ found that there was no medical evidence that Plaintiff had any limitations before October 2019.  (*Id.*).  Concerning Plaintiff's back condition, in

October 2019, she complained of back pain and hip pain to her chiropractor, but the ALJ noted that a CT scan taken a month later showed only mild and developing degenerative changes, and medical evidence showed normal ambulation. (*Id.*). The ALJ also noted that in October 2020 images of her thoracolumbar spine appeared normal, and that the only other medical evidence of record related to significant complaints or treatment of her back condition were well after her date last insured. (*Id.*). For example, degenerative changes of her lumbar spine became apparent in October 2022 leading to a spinal fusion. (*Id.* at PageID.40).

Concerning Plaintiff's knee pain, the ALJ found that it had an onset in May 2020, and that she underwent surgery in August 2020. (*Id.*). The ALJ noted that after the surgery Plaintiff had reported she was doing well and was not using any assistive device, and that in October 2020 she reported that her pain was controlled. (*Id.*). The ALJ also observed that in October 2020 Plaintiff's strength and movement in her extremities were normal. (*Id.*). The ALJ additionally stated that after Plaintiff's February 2021 revision surgery her knee appeared normal, and she reported she was doing well in August 2021. (*Id.*). The ALJ later discussed that over a year after Plaintiff's last date insured, the evidence shows she recovered well from her surgeries and medical evidence reflected normal gait and full strength in all extremities. (*Id.* at PageID.42).

19

The ALJ found that "given her history of back pain and minor changes on imaging studies, together with later developed right knee problem and a much later developed recurrent back problem with surgery, it is reasonable to find she required some postural limitations related to back pain, including occasional stooping and crouching during the relevant period." (*Id.* at PageID.41).  The ALJ also found that as of the date last insured "the record confirms the claimant had a severe right knee impairment that warranted limitation to sedentary work with no kneeling or crawling and only occasional use of foot controls as well as some environmental limitations to prevent symptom exacerbation, and hazard precautions to prevent recurrent injury." (*Id.* at PageID.41–42).  The ALJ concluded that the "assessed residual functional capacity is the most restrictive arguable from this record as present for a durational time during the relevant period." (*Id.* at PageID.42).

It is clear that the ALJ considered the evidence concerning Plaintiff's subjective reports, including her report that she must lie down once or twice during the day and that she elevates her legs to waist level as often as possible, but concluded that the objective findings were sufficient to support the decision. *Huizar v. Comm'r of Soc. Sec.*, 610 F. Supp. 3d 1010, 1022 (E.D. Mich. 2022) (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)) ("The Sixth Circuit states, however, that an ALJ is not required to accept a claimant's

subjective complaints."). The ALJ explicitly considered Plaintiff's back and knee condition, taken together, during the relevant period and found that she required some postural and environmental limitations, but the RFC "is the most restrictive arguable" as supported by objective evidence. "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8 (Oct. 25, 2017). The ALJ clearly stated her reasons for discounting claimant's subjective complaints. It is Plaintiff's burden to show that the ALJ's decision is not supported by substantial evidence, but she did not meet that burden. That there may be evidence supporting Plaintiff's position is not a basis to reverse the ALJ's decision. That decision is supported by substantial evidence, so it should be affirmed.

## V.    RECOMMENDATION

Plaintiff has the burden of proof on her statements of error. *Walters*, 127 F.3d at 529. Plaintiff has not shown legal error that would upend the ALJ's decision. For all these reasons, it is the **RECOMMENDATION** of the Magistrate Judge that Plaintiff's *Motion for Summary Judgment* (ECF No. 11) is **DENIED**,

the Commissioner's *motion for Summary Judgment*  (ECF No. 13) is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

22

No. 2," etc. If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date: March 6, 2026

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge

23